IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA DEPARTMENT OF CORRECTIONS,**
**Employer Below, Petitioner**

**FILED**
**February 27, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-493**     (JCN: 2019012901)

**MIKE TENCER,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner West Virginia Department of Corrections ("WVDOC") appeals the October 11, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Mike Tencer timely filed a response. [1] WVDOC filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order granting respondent a 12% permanent partial disability ("PPD") award and, instead, granting him a 22% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Tencer has a significant history of preexisting degenerative conditions throughout his spine, with treatment records dating back to 2012. However, only Mr. Tencer's cervical spine is relevant to this appeal. In April of 2015, Mr. Tencer underwent a CT scan of the head, cervical spine, and facial bones. The report indicated multilevel degenerative joint disease. In September of 2018, Mr. Tencer sought treatment from his primary care physician, Brittany Gusic, M.D., for several complaints, including complaints of neck pain and cervical radiculopathy. Dr. Gusic's diagnoses included cervical radiculopathy, and she advised Mr. Tencer to discuss various medications with his present pain management provider and ordered x-rays of the cervical spine. The x-rays showed findings of cervical spondylosis with disc disease and encroachment of the neural foramina bilaterally. Mr. Tencer returned to Dr. Gusic's office on October 16, 2018, and reported that he had been admitted to the hospital the prior week due to an unintentional drug overdose wherein he took six of his back pain medications within twelve hours. On October

---

[1] WVDOC is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mike Tencer is represented by Christopher J. Wallace, Esq.

25, 2018, Mr. Tencer underwent an MRI of the cervical spine, which revealed normal alignment of the cervical spine; normal bony signal; cervical cord signal and morphology appeared normal; and the cervical medullary junction appeared normal. A few days later, Dr. Gusic advised Mr. Tencer that the MRI showed a few bony protrusions that could be impinging on nerves and placed an order for therapy.

On December 11, 2018, Mr. Tencer sustained the subject compensable injury when he fell from a ladder and landed on his back and head. A CT scan of the chest, abdomen, and pelvis demonstrated nondisplaced left L2, L4, and L5 transverse process fractures and a left iliac crest hematoma with active bleeding. A CT scan of the cervical spine indicated mild generalized degenerative changes with no acute findings. Mr. Tencer was admitted to the hospital in critical condition. On December 27, 2018, the claim administrator held the claim compensable for a laceration to the back of the head; left shoulder contusion; contusion to bilateral elbows; transverse fractures of the L2, L4, and L5; and a hematoma to the left hip/buttocks.

Mr. Tencer underwent an MRI on May 17, 2019, which revealed significant multilevel disc disease causing spinal and neural foraminal stenosis, moderate bilateral neural foraminal stenosis at C6-C7 mild to moderate spinal stenosis; moderate right neural foraminal stenosis at C5-C6; moderate spinal stenosis and moderate right neural foraminal stenosis at C4-C5; moderate left-sided spinal stenosis, severe left-sided neural foraminal stenosis, and moderate right sided neural foraminal stenosis at C3-C4.

Subsequently, on June 18, 2019, the claim administrator issued a Notice of Secondary Conditions adding various conditions to the claim, including cervical radiculopathy with right C6 and bilateral C7 poly radiculopathy. Mr. Tencer underwent a surgery, "hemilaminectomies with keyhole foraminotomies at the right C5-C6 level and bilaterally at the C6-C7 level," on January 1, 2020. This surgery was authorized by the claim administrator. On July 1, 2020, Mr. Tencer underwent an anterior cervical discectomy and fusion ("ACDF") surgery at C5-C6 and C6-C7. This surgery was also authorized by the claim administrator.

Mr. Tencer underwent an independent medical evaluation ("IME") performed by Jennifer L. Lultschik, M.D., on March 10, 2021. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*") and West Virginia Code of State Rules § 85-20 (2006) ("Rule 20"), Dr. Lultschik assessed 0% whole person impairment ("WPI") for the laceration of the head; 0% WPI for the unspecified head injury; 0% WPI for the left elbow contusion; 0% WPI for cervical radiculopathy;[2] and 15% WPI for transverse fractures of L2, L4, and L5,

---

[2] Dr. Lultschik assessed 25% WPI related to cervical radiculopathy but apportioned the entire amount to preexisting degenerative conditions.

unspecified fracture of the lumbar vertebra, and contusion of the low back and pelvis. By order dated March 25, 2021, the claim administrator granted Mr. Tencer a 15% permanent partial disability ("PPD") award based on Dr. Lultschik's report. This 15% PPD award was affirmed by the Office of Judges ("OOJ").

In September of 2021, Mr. Tencer underwent posterior cervical decompression at C3, C4, and C5, as well as partial C6, and posterior cervical fusion surgery at C3-T1. Dr. Lultschik conducted a second IME on July 18, 2022. Using the *Guides*, Dr. Lultschik assessed the same amount of WPI as it pertained to Mr. Tencer's laceration of the head; unspecified head injury; left elbow contusion; transverse fractures of L2, L4, and L5; unspecified fracture of the lumbar vertebra; and contusion of the low back and pelvis as she had in her 2021 IME. Regarding the cervical radiculopathy diagnosis, Dr. Lultschik provided a new impairment rating. Specifically, Dr. Lultschik found that Mr. Tencer was entitled to 17% WPI for the decompressive surgery and two fusion surgeries and five levels of operative intervention per Table 75 of the *Guides*.[3] Dr. Lultschik also found that Mr. Tencer had 12% WPI related to range of motion deficits in the cervical spine. Combining the two impairments resulted in 27% WPI for the diagnosis of cervical radiculopathy. Dr. Lultschik then applied Rule 20 and found that Mr. Tencer fell into Cervical Category IV, allowing for 25-28% WPI, requiring no further adjustment.

Turning to apportionment, Dr. Lultschik noted Mr. Tencer's preexisting history of multilevel degenerative disc disease causing spinal and neural foraminal stenosis at multiple levels and the lack of evidence of any acute injury to the cervical spine on the date of injury. Dr. Lultschik opined that Mr. Tencer's reported symptoms were difficult to explain and were more likely than not related to his significant preexisting paresthesia and peripheral polyneuropathy. Accordingly, Dr. Lultschik apportioned 13% to Mr. Tencer's preexisting polyneuropathy and chronic degenerative cervical changes and attributed 14% to the compensable injury. Dr. Lultschik acknowledged that her present findings differed from her findings in the 2021 IME but noted that Mr. Tencer had exhibited reduced range of motion in the cervical spine as compared to the prior IME, which was directly attributable to the authorized multilevel posterior fusion.

Dr. Lultschik then combined all of the impairments for the accepted diagnoses using the Combined Values Chart of the *Guides* and reached a total of 27% WPI. Dr. Lultschik subtracted the 15% PPD award Mr. Tencer had previously received and (mistakenly) recommended that he be granted an additional 14% PPD award, which the claim administrator granted. However, Dr. Lultschik issued an addendum in which she noted the

---

[3] Dr. Lultschik opined that the surgical procedures were performed to address preexisting chronic degenerative changes in the cervical spine. However, the three procedures were expressly authorized under the claim, and Mr. Tencer now had limited range of motion related to these procedures, qualifying him for a permanent impairment rating.

3

error in her prior calculation and stated that Mr. Lultschik would be entitled to an additional 12% PPD award, not a 14% PPD award. The claim administrator issued a corrected order dated September 13, 2022, in which it granted Mr. Tencer a 12% PPD award rather than the 14% previously granted based on Dr. Lultschik's report. Mr. Tencer protested the September 13, 2022, order to the Board.

On November 3, 2022, Mr. Tencer underwent an IME performed by Bruce Guberman, M.D. Dr. Guberman noted that he was asked to evaluate the cervical spine only and, using the *Guides*, assessed 17% WPI related to Mr. Tencer's surgeries per Table 75, 11% WPI for range of motion abnormalities, and 1% WPI for sensory deficits. Using the Combined Values Chart, Dr. Guberman reached a total of 27% WPI. Dr. Guberman then applied Rule 20 and found that Mr. Tencer fell into Cervical Category IV, allowing for 25-28% WPI, requiring no further adjustment.

Regarding apportionment, Dr. Guberman noted Mr. Tencer's history of peripheral neuropathy, bilateral carpal tunnel syndrome, and cubital tunnel syndrome. Dr. Guberman also noted Mr. Tencer's radiculopathy diagnosis, but attributed the same to the compensable injury, and opined that nothing should be apportioned for Mr. Tencer's peripheral neuropathy. Dr. Guberman opined that degenerative changes alone on imaging studies of the cervical spine "would not entitle [Mr. Tencer] to an impairment rating based on either the range-of-motion model nor Table 85-0-E." However, because Mr. Tencer had a history of neck pain in the past (which Dr. Guberman implied was minimal by noting that Mr. Tencer was able to maintain employment and had no significant loss of activities of daily living), Dr. Guberman apportioned 5% WPI to preexisting conditions and attributed 22% impairment to the injury, which was his final recommendation. Dr. Guberman did not address Mr. Tencer's prior PPD award with regard to his lumbar spine.

By order dated October 11, 2023, the Board reversed the claim administrator's September 13, 2022, order and granted Mr. Tencer an additional 22% PPD award in accordance with Dr. Guberman's report. The Board summarized the two reports from Dr. Lultschik and the report from Dr. Guberman in conjunction with this Court's holding in *Duff v. Kanawha County Commission*, 247 W. Va. 550, 882 S.E.2d 916 (Ct. App. 2022). The Board acknowledged our statements in *Duff* regarding information to be considered in determining whether apportionment is proper, including diagnostic tests, range of motion studies, and medical records concerning a history of prior complaints and interference with work or activities of daily living. The Board found that, here, Mr. Tencer had a cervical CT scan in 2015 showing narrowing at C3-C4 and C6-C7 resulting in neural foraminal stenosis and an MRI from 2018 showing cervical spondylosis with disc disease and encroachment of the neural foraminal bilaterally at the level of C6-C7. The Board further noted medical records from Dr. Gusic in 2018 which indicated Mr. Tencer's complaints of pain and his pre-injury cervical radiculopathy diagnosis.

4

Accordingly, the Board found that the evidence indicated that apportionment should occur and was proper because the records established preexisting cervical spine conditions. The main difference between the reports of Dr. Lultschik and Dr. Guberman was how much to apportion due to preexisting conditions. The Board ultimately concluded that Dr. Lultschik's report was not reliable or supported by the evidence of record. Specifically, the Board noted that Dr. Lultschik acknowledged that cervical radiculopathy is a compensable condition in the claim, that Dr. Lultschik opined that 17% WPI was warranted based on Mr. Tencer having undergone three surgeries alone, and that Dr. Lultschik determined that Mr. Tencer's range of motion deficits were attributable to the surgeries. Based on these findings, the Board concluded that Dr. Lultschik's opinion that half, or roughly 13%, was attributable to preexisting conditions was not supported by the record. In contrast, Dr. Guberman recommended that 5% WPI be attributed to preexisting degenerative changes, and the Board found this recommendation to be reliable and supported by the evidence. As such, the Board reversed the claim administrator's order and granted Mr. Tencer a 22% PPD award in accordance with Dr. Guberman's recommendation. WVDOC now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff*, 247 W. Va. at 555, 882 S.E.2d at 921.

On appeal, WVDOC raises two main arguments regarding why the Board erred in relying on Dr. Guberman's report: (1) Dr. Guberman erred in apportioning only 5% impairment to preexisting conditions based on the incorrect assumption that cervical radiculopathy did not preexist the compensable injury and (2) Dr. Guberman failed to apply the Combined Values Chart in the *Guides* despite the fact that Mr. Tencer had already been granted a PPD award implementing the same chart. Regarding the first argument, WVDOC claims that Mr. Tencer's cervical radiculopathy clearly predated the claim and, therefore,

5

Dr. Guberman should have apportioned due to this fact. WVDOC contends that "[t]o only apportion 5% of 22% to [Mr. Tencer's] well-documented, actively symptomatic condition at the time of the compensable injury is outrageous [and] also contrary to applicable case law."

Regarding the second argument, WVDOC claims that Dr. Guberman should have applied the Combined Values Chart to combine the impairment ratings for Mr. Tencer's lumbar and cervical spine in reaching his final impairment rating. According to WVDOC, Mr. Tencer had already been granted a PPD award for his lumbar spine impairment, which resulted from the same injury as the cervical spine impairment at issue in this appeal. WVDOC contends that the *Guides* requires that the Combined Values Chart be applied when there are multiple impairments of different body parts, and that Dr. Guberman's failure to apply the chart renders his report less reliable. WVDOC states that case law indicates that a PPD award must be based upon the stated findings of one physician and, consequently, Dr. Guberman's report should be disqualified for his failure to apply the Combined Values Chart. Given the foregoing, WVDOC argues that the Board clearly erred in relying upon Dr. Guberman's report.

We disagree. Upon review, we find that WVDOC failed to demonstrate that the Board's findings and conclusions were clearly wrong. The Supreme Court of Appeals of West Virginia has held that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard in mind, we are unable to conclude that the Board erred in awarding Mr. Tencer a 22% PPD award in accordance with Dr. Guberman's recommendation.

At the outset, we dispense with WVDOC's argument that the Board erred in relying on Dr. Guberman's report due to the fact that he did not apportion for Mr. Tencer's preexisting cervical radiculopathy. Critically, the claim administrator held the claim compensable for cervical radiculopathy. Whether that decision was correct is not before this Court—cervical radiculopathy is a compensable condition in this claim. In assessing impairment related to Mr. Tencer's cervical radiculopathy diagnosis, Dr. Guberman assessed 17% WPI related solely to authorized surgeries in the claim. Indeed, per the *Guides*, these surgeries are assigned certain impairments for a claimant simply having undergone the surgery. Dr. Guberman also assessed 11% WPI due to range of motion impairments and 1% WPI for sensory deficits. These values combined to 27% and needed no further adjustment when applying Rule 20. In determining whether to apportion, Dr. Guberman acknowledged that Mr. Tencer had symptoms prior to the compensable injury and, as such, apportioned 5% to preexisting conditions. The Board determined that Dr. Guberman's apportionment was more persuasive than Dr. Lultschik's decision to apportion 13% WPI, approximately half of her total recommendation, to preexisting conditions. Under the circumstances of this case, we cannot say that the Board was clearly wrong to

6

rely on Dr. Guberman's report, especially considering that cervical radiculopathy is a compensable condition in the claim, the related surgeries were authorized in the claim, and that, while Mr. Tencer had a documented history of preexisting conditions, he was able to maintain employment and had no significant loss of activities of daily living before the underlying injury.

Turning to WVDOC's second argument, we find no merit in its assertion that the Board erred in relying on Dr. Guberman's report when he did not apply the Combined Values Chart to combine the impairments for Mr. Tencer's lumbar and cervical spine. We conclude that WVDOC has failed to meet its burden in this regard. While the Combined Values Chart must be applied when rating multiple regions of the body at the same time, none of the authority cited by WVDOC requires application of the Combined Values Chart when *subsequently* rating another region. Here, Mr. Tencer had already been granted a PPD award for his lumbar spine. When the time came to evaluate Mr. Tencer for his cervical spine impairment following his surgery, Dr. Guberman noted that he was asked to rate only Mr. Tencer's cervical spine. WVDOC does not adequately establish any error in this regard.

Likewise, to the extent WVDOC argues that Dr. Guberman's report should be disregarded upon the basis that an impairment rating must come from a single physician's report, we find no error. As noted above, Mr. Tencer was granted a 15% PPD award, which was affirmed by the OOJ. Mr. Tencer subsequently sought an additional award for his cervical spine following surgery, which Dr. Lultschik rated as having 0% WPI related to the compensable injury. Dr. Guberman was asked to evaluate the cervical spine only, and the Board noted that the 22% award granted to Mr. Tencer based on Dr. Guberman's report was for the "cervical spine aspect of the injury." Given the distinct nature of this subsequent, additional PPD award, we find no error in the Board's reliance upon Dr. Guberman to provide an impairment rating rather than Dr. Lultschik. In sum, we cannot find that Dr. Guberman erred in the manner in which he assessed Mr. Tencer and, consequently, the Board did not err in relying on Dr. Guberman's report.

Accordingly, we affirm the Board's October 11, 2023, order granting Mr. Tencer a 22% PPD award in accordance with Dr. Guberman's recommendation.

Affirmed.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

Chief Judge Thomas E. Scarr, not participating